**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE:


APPLICATION OF LOUDMILA
BOURLAKOVA AND VERONICA
BOURLAKOVA TO TAKE DISCOVERY
FOR USE IN A FOREIGN PROCEEDING
PURSUANT TO 28 U.S.C. § 1782

Case No. 1:24-mc-00071

<br>

**MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION TO INTERVENE AND TO VACATE THE ORDER GRANTING**
**THE APPLICATION AND QUASH THE SUBPOENA**

<br>

Nicole A. Sullivan, Esq.
**WHITE AND WILLIAMS LLP**
7 Times Square, Suite 2900
New York, New York 10036

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 4

I.   THE PARTNERSHIP.................................................................................................... 4

II.  THE GLOBAL LITIGATION ..................................................................................... 5

III. THE LONDON PROCEEDING AND APPLICATION  FOR A WORLDWIDE
FREEZING ORDER ................................................................................................ 7

IV. THE 1782 APPLICATION ..................................................................................... 10

ARGUMENT ................................................................................................................ 11

I.   THE COURT SHOULD PERMIT NIKOLAI  AND VERA TO INTERVENE IN THIS
CASE ............................................................................................................... 11

II.  THE PETITION TO TAKE DISCOVERY SHOULD BE DENIED ................................. 13

   A.  Legal Standard.................................................................................................... 13

   B.  The Court Should Exercise its Discretion to Deny the Application Because Petitioners
Have Acted in Bad Faith........................................................................................ 14

      1.  Section 1782 Cannot Be Used to Support Efforts to Verify Already Submitted
Fraudulent Evidence ...................................................................................... 14

      2.  The Pending Florida Proceedings, and the Failure to Advise the Court of Them, is
Bad Faith Precluding Discovery ...................................................................... 17

      3.  The WFO Application was Brought to Harass the Kazakovs ................................... 19

   C.  The 1782 Application Should be Denied  as an Improper Fishing Expedition.............. 20

III. IF THE COURT IS INCLINED TO PERMIT THE PETITIONERS' REQUESTED
DISCOVERY, IMMEDIATE DISCOVERY OF THE  PETITIONERS BY THE
KAZAKOVS  SHOULD BE PERMITTED ................................................................ 23

CONCLUSION............................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aristocrat Leisure Ltd. V. Deutsche Bank Trust Co. Ams.,*
    262 F.R.D. 348 (S.D.N.Y. 2009) ........................................................................11

*Banoka S.à.r.l v. Alvarez & Marshal, Inc.,*
    2023 U.S. Dist. LEXIS 17176 (S.D.N.Y. Feb. 1, 2023)......................................22

*CBF Industria de Gusa v. AMCI Holdings, Inc.,*
    850 F.3d 58 (2d Cir. 2017)..................................................................................16

*Euromepa S.A. v. R. Esmerian, Inc.,*
    51 F.3d 1095 (2d Cir. 1995).................................................................................14

*Ex Parte Gov't of the Lao People's Democratic Republic,*
    2017 WL 2838051 (D. Idaho June 30, 2017) .......................................................18

*Grupo Mexicano de Desarrollo, S. A. v. Alliance Bond Fund, Inc.,*
    527 U.S. 308 (1999)..............................................................................................17

*In re Application Auto-Guadeloupe Investissement S.A., for an Order to Take
    Discovery Pursuant to 28 U.S.C. Section 1782,*
    2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012) .......................................................18

*In re Application of Diligence Global Bus. Intelligence S.A.,*
    2021 U.S. Dist. LEXIS 100801 (S.D.N.Y. May 27, 2021) (Oetken, J.)..........15, 20

*In re Application of Sarrio, S.A.*
    119 F.3d 143 (2d Cir. 1997)................................................................................11

*In re da Costa Pinto,*
    No. 1:17-cv-22784-MGC, 2018 U.S. Dist. LEXIS 146372...................................12

*In re Devine,*
    No. 22-MC-133 (VSB), 2022 U.S. Dist. LEXIS 94193, 2022 WL 1658586
    (S.D.N.Y. May 25, 2022)......................................................................................12

*In re Harbour Vict. Inv. Holdings Ltd.,*
    2015 U.S. Dist. LEXIS 87912 (S.D.N.Y. June 29, 2015)..........................19, 20, 21

*In re Hornbeam Corp.,*
    2015 U.S. Dist. LEXIS 142361 (S.D.N.Y. Sep. 17, 2015).........................11, 12, 13

*In re JSCBTA Bank,*
    577 F. 577 F.mc- Supp. 3d 262 (S.D.N.Y. 2021) ................................................13

*In re Lake Holding & Fin. S.A.*,
    2021 U.S. Dist. LEXIS 45822 (S.D.N.Y. Mar. 10, 2021) ......................................................13

*In re Libyan Asset Recovery*,
    2023 U.S. Dist. LEXIS 206667 (S.D.N.Y. Nov. 16, 2023) .................................................21

*In re Okean B.V.*,
    60 F. Supp. 3d 419 (S.D.N.Y. 2014) .................................................................................16

*In re Tel. Media Grp. Ltd.*,
    2023 U.S. Dist. LEXIS 158092 (S.D.N.Y. Sep. 6, 2023) .................................................11

*In re WinNet R CJSC*,
    2017 U.S. Dist. LEXIS 56985 (S.D.N.Y. Apr. 13, 2017)..................................................19

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ....................................................................................................13, 14

*Inv. Vehicles v. KPMG, L.L.P.*,
    798 F.3d 113 (2d Cir. 2015)..............................................................................................20

*Keystone Driller Co. v. Gen Excavator Co.*,
    290 U.S. 240 (1933) .........................................................................................................15

*Kiobel ex rel. Samkalden v. Cravath, Swaine & Moore LLP*,
    895 F.3d 238 (2d Cir. 2018)..............................................................................................14

*Metallgesellschaft v. Hodapp (In re An Order Permitting Metallgesellschaft Ag to*
    *Take Discovery)*,
    121 F.3d 77 (2d Cir. 1997)..........................................................................................14, 20

*Tiffany (NJ) LLC, Tiffany & Co. v. China Merchants Bank*,
    589 F. App'x 550 (2d Cir. 2014) ......................................................................................17

*Younger v. Harris*,
    401 U.S. 37 (1971)............................................................................................................19

**STATUTES**

28 U.S.C. § 1782 ............................................................................................................ *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 24(a) ..................................................................................................11, 13

Fed. R. Civ. P. 24(b) ..................................................................................................11, 13

30 Moore's Federal Practice - Civil § 811.04 (2024) ....................................................17

Nikolai Kazakov ("Nikolai") and Vera Kazakov ("Vera") (collectively the "Kazakovs" or "Intervenors") respectfully submit this Memorandum of Law in support of their Motion to Intervene in this case and to vacate the order granting the Application and Quash the Subpoena.

## PRELIMINARY STATEMENT

The Petitioners', Loudmila Bourlakova ("Loudmila") and Veronica Bourlakova ("Veronica") (the "Petitioners" or, collectively, with non-party Elena Bourlakova ("Elena") the "Bourlakovas") application for discovery under § 1782 highlights the dangers of *ex parte* proceedings. When one party believes it will be proceeding unopposed, the temptation to misrepresent the record can be great. Petitioners gave into that temptation here: Their *ex parte* application omits critical facts about the circumstances underlying the foreign proceedings for which it seeks discovery, existing and related Florida cases and the true purpose of their application.

In their *ex parte* application, Petitioners claim to be seeking discovery from Clearing House Payment Company, L.L.C. ("CHIPS"), a New York-based clearinghouse, that is relevant to their application for a world-wide freezing order against the Kazakovs and two additional parties (the "WFO Application") in a proceeding pending before the High Court of London, England (the "London Proceeding"). Petitioners failed to advise this Court that the only evidence submitted in support of their WFO Application was a completely fabricated, fraudulent and fictitious investigative report prepared by CT Corporation ("CT Report"). Petitioners also failed to advise this Court that the day after filing this Petition, they withdrew this same evidence that forms the basis for the discovery sought here. Nor have Petitioners advised this Court that some of the evidence submitted had been obtained through hacking or some other nefarious means of Nikolai's and Vera's personal and business communications as well as their banking records and privileged conversations with counsel. Despite all of this, Petitioners have not withdrawn this Petition. Where

a request for discovery under § 1782 is permeated by fraud and therefore conflicts with U.S. legal principles the requested discovery should be denied.

Petitioners also failed to inform this Court that *one or the other of Petitioners has brought no fewer than three separate actions in federal and state courts in the State of Florida* seeking a wide variety of relief. Currently, Veronica and Elena have a proceeding in Florida pending since 2021 and Veronica has a second proceeding pending in Florida since 2023. The Kazakovs have served broad counterclaims in these cases, Loudmila has been made a party (a counterclaim defendant), and all of the claims are related to the matters being litigated in the London Proceeding. The Petitioners also failed to advise this Court that while they embarked on a scorched earth but unsuccessful effort to obtain dismissal of the counterclaims on jurisdictional and *forum non conveniens* grounds, they have served discovery in both Florida proceedings seeking information about the Kazakovs' assets (and moved to compel production), similar to the discovery sought here. And they failed to advise that, at the same time, Petitioners, to date, have refused to participate in discovery in those cases. As such, the Petition is seeking to circumvent the discovery process in the Florida proceedings, which should not be countenanced by this Court. This is yet another ground for denying the Petition.

These material omissions show that the Petitioners have not been candid with this Court and are not acting in good faith. Significantly, Petitioners' lack of candor is not the only indication of their bad faith. That Petitioners' WFO Application was designed to harass and oppress the Kazakovs is evident from the fact that, since 2020, when the London Proceeding was commenced, one or more of the Petitioners has alleged in the London Proceeding that the Kazakovs possess substantial assets that properly belong to the Petitioners. If Petitioners had any concern about a purported need to protect those assets from dissipation, they would have filed the WFO

Application at the same time they initiated the London Proceeding, some four years ago. But they did not. It is evident that the sudden urge to protect these assets from dissipation arises from the success that the Kazakovs have had in the Florida litigations and elsewhere, which the Petitioners omit from their *ex parte* application. Petitioners only sought the WFO Application after the Florida court decided to exercise personal jurisdiction over the Bourlakovas (and Veronica's husband, Gregory Gliner ("Gliner")), and denied theirs motions to dismiss based on lack of subject matter jurisdiction – their permission to appeal the same has been denied -- and *forum non conveniens*.

It is clear that the motivation of the WFO Application was and is to handcuff financially the Kazakovs in order to *prevent* them from continuing to prosecute their counterclaims in the Florida litigations, defending the London Proceeding, or participating in the numerous other pending proceedings across the globe. Section 1782 certainly should not be utilized to assist foreign litigants in perpetuating a flawed and fraudulent application or obtaining relief against other litigants that is rooted in the same fraudulent conduct. This is particularly true here where the relief sought by the Petitioners in the London action - - a worldwide freezing order - - is relief generally not available in the United States and contrary to public policy. Petitioners' efforts to do so here should be rejected outright by this Court.

The lack of good faith is further evidenced by the Petitioners' wholly disingenuous claim that they are seeking "limited discovery" when their subpoena is the polar opposite of "limited." On the contrary, Petitioners have served wide ranging and comprehensive document requests on CHIPS seeking, in effect to obtain information about any financial transaction that might have been conducted by the Kazakovs, several other individuals, any purportedly affiliated company, and over one-hundred separate bank accounts. Cases under § 1782 have repeatedly held that it does not permit "fishing expeditions," where the petitioner seeks to obtain *ex parte* a haul of

documents in the "hopes" of finding something that supports his or her claim against parties who were absent. Nor do courts permit § 1782 to circumvent the domestic discovery process to search for information to "verify" highly questionable claims premised on improper litigation conduct. Yet that is exactly what the Petition here does, and thus, it should be denied.

Even if the Petitioners' Application could survive despite the aforementioned flaws, on Friday, March 15, they informed the Kazakovs' counsel that they intend to withdraw the WFO Application against the Kazakovs and another party, continuing only against one corporate party. Thus, the only possible justification for pursuing this discovery relating to the Kazakovs' assets, accounts and financial transactions is now gone.

For the reasons set forth herein and because good faith is a prerequisite for relief under § 1782, Petitioners' *ex parte* application should be denied.

## **STATEMENT OF FACTS**

### I.   **THE PARTNERSHIP**

The Petition and the London Proceeding are among many actions pending worldwide that seek control of a fortune accumulated Nikolai and his longtime business partner, Oleg Bourlakov ("Oleg"). As set forth in Nikolai's counterclaims asserted in the Florida actions, Oleg was Vera's brother and Nikolai's brother-in-law and is the late husband of Loudmila and father of Veronica. Nicole A. Sullivan Declaration, dated March 20, 2024 ("Sullivan Decl.") ¶ 4, Exhibits A and B. In 1988, Oleg and Nikolai agreed to enter a partnership whereby they would share the rewards and risks of business ventures they would pursue together. Sullivan Decl. ¶ 5. The partnership was entirely valid under Soviet and later Russian law and consistent with the business arrangements that were common at the time in Russia, which was transitioning from the long Soviet-era communist phase. Sullivan Decl. ¶ 5. Over the course of the next thirty years, Oleg and Nikolai

entered into a number of successful businesses, building a partnership fortune valued at over $3 billion at Oleg's death. Sullivan Decl. ¶ 5.

In 2018, Oleg's marriage to Loudmila came under stress. Sullivan Decl. ¶ 6. At the time, Oleg was living with Loudmila in Monaco. As a result, Nikolai sought to protect the fortune he had built with Oleg and requested that his share of the partnership assets, many of which were being held by Loudmila for the benefit of both partners, be returned. Sullivan Decl. ¶ 6. Loudmila refused and for the first time, the Bourlakovas denied that the partnership had ever existed insisting instead that all the assets accumulated over 30 years were "Bourlakova family assets." Sullivan Decl. ¶ 6. Since Loudmila breached her safekeeping duty toward Nikolai and Oleg, she along with her daughters have used those assets as their own, including spending a substantial sum to fund their global litigation.

In July of 2021, Oleg died in Moscow. Sullivan Decl. ¶ 8. He left a holographic will naming Nikolai and Vera as the universal legatees of his estate. Sullivan Decl. ¶ 8. Since then, the Bourlakovas have engaged in nefarious, illegal and fraudulent activity to derive support for their fabricated basis to keep the stolen assets from Nikolai and Vera.

## II.   THE GLOBAL LITIGATION

Since 2018, litigation over these assets has arisen across the globe, including cases in Monaco, the Isle of Mann, Cyprus, Switzerland, Russia, Ukraine, Latvia and Panama. Sullivan Decl. ¶ 7. Included among these was a case commenced by Loudmila in the High Court of London seeking recovery from Oleg, Nikolai, Vera and others under a number of legal theories. Sullivan Decl. ¶ 7. In September 2023, Veronica's Motion to join that litigation and assert claims was granted. Sullivan Decl. ¶ 7.

The litigation also has included three separate cases, each filed by one or more of the Bourlakovas in Florida. Sullivan Decl. ¶ 9. Veronica and Elena, purportedly in their capacities as

guardians of their minor children, brought an action in Florida state court in Miami in 2021 seeking to gain control of a property in Florida that Oleg had placed in a trust for the benefit of Nikolai and Vera and certain cash. Sullivan Decl. ¶ 10, Exhibit C. In November 2022, Loudmila, Veronica and Elena brought an action under the Racketeer Influenced and Corrupt Organizations Act brought by in the Southern District of Florida, which asserted a number of claims against various parties relating certain partnership assets (the "RICO Complaint"). Sullivan Decl. ¶ 11, Exhibit D. Before serving any of the defendants but after they apparently used the RICO Complaint to besmirch the Kazakovs, Loudmila, Veronica and Elena voluntarily dismissed the action. In January of 2023, Veronica brought yet a third case in Florida, this one seeking a declaration that she was the owner of a Panamanian company called Edelweiss, Inc. while also trying to claim ownership over the same entity in the London Proceeding. Sullivan Decl. ¶ 12, Exhibit F.

Nikolai and Vera asserted Counterclaims in the two state court actions seeking, in part, a declaration that Nikolai and Oleg were partners; that Loudmila breached a contract whereby she agreed to hold certain partnership assets for the benefit of Nikolai and tortiously interfered with the partnership agreement between Nikolai and Oleg; and that Bourlakovas and Veronica's husband, Gliner, attempted to deprive Nikolai of his partnership assets and interfere with the Kazakovs rights as universal legatees under Oleg's will. Sullivan Decl. ¶¶ 5-8. Veronica, Loudmila and Elena all sought to have those claims dismissed on various grounds including *forum non conveniens* and lack of both personal jurisdiction and subject matter jurisdiction. The motions to dismiss were denied in late 2023 and there was no appeal taken of the decision denying dismissal for lack of personal jurisdiction. Sullivan Decl. ¶ 14, Exhibits G, H and I. A Petition to appeal the subject matter jurisdiction decision was likewise rejected by the Florida District Court of Appeals. Sullivan Decl. ¶ 14, Exhibit J. Nevertheless, Veronica, Loudmila and Elena continue to contest

efforts to pursue discovery against them in Florida while moving to compel compliance with their document requests served on the Kazakovs for which hearings are set in April. Sullivan Decl. ¶ 15.

### III.   THE LONDON PROCEEDING AND APPLICATION FOR A WORLDWIDE FREEZING ORDER

The London Proceeding was originally filed by Loudmila against Nikolai, Vera, Oleg and others in 2020. Sullivan Decl. ¶ 16. The case asserted a number of claims essentially contending that Nikolai and Oleg had misappropriated certain assets that they had generated over the course of their 30-year partnership. Sullivan Decl. ¶ 16. Veronica moved and successfully joined the litigation as a claimant in late 2023 Sullivan Decl. ¶ 7.

On about January 18, 2024 – nearly four years after Loudmila instituted the London Proceeding – Loudmila and Veronica filed an application in the High Court of London seeking a worldwide freezing order against the assets of Nikolai, Vera and two other parties. Sullivan Decl. ¶ 18, Exhibit L. The WFO Application was filed *ex parte*, and no notice was provided to Intervenors until February 12, 2024. *Id.* The principal support that the Petitioners offered for this application – which sought to freeze almost $1 billion in assets – was the CT Report that they had purportedly obtained from an investigator in London. *Id.*

The 85-page CT Report referenced a number of transactions that purportedly demonstrated an effort on the part of Nikolai and Vera to dissipate disputed assets. Sullivan Decl. ¶ 19, Exhibit M. It also referenced what it claimed were emails and other documents supposedly demonstrating a conspiracy involving Nikolai and Vera to dissipate these assets. *Id.* Nevertheless, upon examination, it became apparent that the CT Report included a great deal of stolen and fictitious information. It referenced numerous "transfers" that did not in fact occur – over 180 in all -- referenced a number of companies that did not exist; and included emails and documents that were

completely forged and fabricated. Despite this, counsel for Petitioners utilized the CT Report and its fraudulent content as their principal evidence in support of their WFO Application and obtained a hearing date before the London Court of February 21, 2024 – only six business days after the Kazakovs received notice of the Application.  Sullivan Decl. ¶ 20.

Prior to the hearing, counsel for Nikolai and Vera brought to the attention of the Bourlakovas' English counsel – the global firm Mishcon de Reya ("Mishcon") – that the CT Report consisted primarily of fraudulent and fabricated material. Sullivan Decl. ¶ 21. This should hardly have come as a surprise to Mishcon. Sullivan Decl. ¶ 22.  Mishcon had previously utilized the same investigator – CT Group – in a similar investigation that likewise resulted in a false, fabricated and fraudulent report that Mishcon attempted to use in another London proceeding that resulted in the London High Court noting that the evidence that the bank records were forged was very strong. Sullivan Decl. ¶ 22, Exhibit M. Not surprisingly, on the eve of the hearing on the WFO Application, Mishcon informed the London Court that it would not be utilizing the fraudulent material in support of its WFO Application. Sullivan Decl. ¶ 23. By doing so, they eliminated virtually all evidence of purportedly improper transactions that forms the basis for the WFO Application and the discovery sought here. Sullivan Decl. ¶ 7.

A hearing was then held in London on February 21 and 22. Sullivan Decl. ¶ 24, Exhibit O. During the hearing, the London High Court understandably expressed concerns about the initial use of fraudulent evidence. Sullivan Decl. ¶ 24. At that time, counsel specifically indicated the desire to use this § 1782 Application to "verify" that the information included in the CT Report (or at least some of it) was valid. Sullivan Decl. ¶ 24. At the conclusion of the hearing, the London High Court informed the Petitioners' counsel that it would adjourn the hearing but expected them to inform the Kazakovs no later than the following Tuesday, February 26, whether they intended

to place any reliance upon the CT Report or whether it would be withdrawn. Sullivan Decl. ¶ 24. Despite this clear directive, Petitioners' counsel did not inform the London High Court of their intention by that date, which is very telling.

After the hearing, the Kazakovs continued their investigation and communications with the Bourlakovas' counsel. Sullivan Decl. ¶ 25. This led to the discovery of even more egregious conduct in connection with the WFO Application. Specifically, the Kazakovs learned that many of their private and confidential communications had been obtained by the Bourlakovas, including detailed banking records and privileged communications. Sullivan Decl. ¶¶ 27, 28. These include emails between Nikolai and his Monaco bankers as well as his private banking records and private documents from Nikolai's solely owned LLC company. Sullivan Decl. ¶ 29. More egregiously, the Kazakovs learned that Mishcon had obtained possession of privileged communications between the Kazakovs and their counsel and had retained those communications for several months without advising counsel for the Kazakovs. Sullivan Decl. ¶ 27. Rather than disclose this information to counsel for the Kazakovs, and even though many of the documents are obviously privileged, Mishcon had purportedly retained an "independent" barrister to review these documents. Sullivan Decl. ¶ 27, Exhibits P, Q. Mishcon then sent thirty-two documents determined to be privileged back to the Kazakovs' counsel. Sullivan Decl. ¶ 28. The confidential and privileged materials in the possession of Mishcon and utilized to support its WFO Application could only have been obtained by illegally accessing the Kazakovs' private communications, including Nikolai's emails. One can assume that the reality of these breaches is far greater than what has been learned so far. To date, the Kazakovs do not know whether Mishcon has produced all of the improperly obtained privileged documents. Sullivan Decl. ¶¶ 26, 27. Mishcon has failed

to disclose how it obtained the Kazakovs' confidential documents, the number of documents obtained or the number of documents still undergoing a "privilege review." Sullivan Decl. ¶ 30.

In light of the substantial confidential, privileged and sensitive material that had been illegally obtained by the Bourlakovas, the Kazakovs, on March 7, moved for an injunction in the London High Court, compelling the return of the same, prohibition against further use, and adjournment of the WFO Application. The motion remains pending. Sullivan Decl. ¶ 31, Exhibits S and L.

On March 15, 2024, Mishcon informed the Kazakovs that they were no longer relying on the CT Report in support of the WFO Application and were no longer seeking to freeze the Kazakovs' assets, although they would continue to seek to freeze Edelweiss's assets. Sullivan Decl. ¶ 32, Exhibit T. They also agreed to pay their costs associated with the opposition to the WFO Application. *Id.* To date, the Petitioners have not also notified the London High Court or withdrawn this Petition and by continuing to seek a WFO Application against Edelweiss, and an injunction against Edelweiss and its shareholding entity, continue efforts to hamstring the Kazakovs. That same day, they disclosed another 23 documents that were privileged to the Kazakovs' counsel raising serious questions about the extent of their access to the Kazakovs' personal and business communications and documents. Sullivan Decl. ¶ 32.

IV.     **THE 1782 APPLICATION**

Despite the questions that already had been raised about their evidence, on February 20, 2024, Petitioners filed the 1782 Application in this Court. ECF No. 1. While the supporting documents describe at length Petitioner's purported arguments on the merits (supported only by a declaration of counsel with no personal knowledge on the subject), and alleged need for this material, counsel said nothing about the existence of significant litigation in the State of Florida and devoted a single sentence to questions raised about their London evidence – and certainly did

not mention the allegations of fraud that already had been raised or their withdrawal of the CT Report from evidence. *Id.* On February 22, 2024, this Court granted the 1782 Petition. ECF No. 7.

While the 1782 Application indicated that Petitioners seek "limited evidence," the subpoena and attached schedule actually revealed the enormity of what Petitioners in fact seek. ECF No. 1. The Application seeks "all" documents relating to ten individuals, thirty-eight companies and on-hundred and sixty-six accounts. *Id.* It is a classic "fishing expedition."

## ARGUMENT

### I.    THE COURT SHOULD PERMIT NIKOLAI AND VERA TO INTERVENE IN THIS CASE

Fed. R. Civ. P. 24(a) requires a court to allow intervention of a party that "claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(b) permits a court to allow intervention of a party that "has a claim or defense that shares with the main action a common question of law or fact," so long as intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." "In evaluating whether the requirements for intervention are met, courts 'accept as true the non-conclusory allegations of the motion.'" *In re Tel. Media Grp. Ltd.*, 2023 U.S. Dist. LEXIS 158092, *7 (S.D.N.Y. Sep. 6, 2023) (quoting *Aristocrat Leisure Ltd. V. Deutsche Bank Trust Co. Ams.*, 262 F.R.D. 348, 352 (S.D.N.Y. 2009) (internal citation omitted)).

The Second Circuit has held that, with respect to applications under § 1782 "parties against whom the requested information will be used may have standing to challenge the lawfulness" of the request. *In re Application of Sarrio, S.A.* 119 F.3d 143, 148 (2d Cir. 1997). Courts routinely grant intervention motions by the "ultimate targets." *In re Hornbeam Corp.*, 2015 U.S. Dist.

LEXIS 142361, at *6 (S.D.N.Y. Sep. 17, 2015) (finding that a party against whom 1782 discovery would be used had standing to challenge issuance of 1782 subpoenas); *In re Devine*, No. 22-MC-133 (VSB), 2022 U.S. Dist. LEXIS 94193, 2022 WL 1658586, at *3 (S.D.N.Y. May 25, 2022) (same). Intervention is particularly appropriate where the Petitioners seek banking and other financial records to use against the proposed intervenor – as Petitioners clearly do here – from a third-party that is unaffiliated with the intervenors and unlikely to adequately protect the intervenor's interests. *See Costa Pinto*, 2022 U.S. Dist. LEXIS 160606, at *4 (granting motion to intervene where 1782 application sought the wire transfer records to be used against intervenors in Brazil); *In re Hornbeam*, 2015 U.S. Dist. LEXIS 142361, at *3 (granting motion to intervene and vacate *ex parte* order granting 1782 application to subpoena intervenor's wire transfer records and there were confidentiality concerns).

Here, the Petitioners have made clear that it was their original intention to utilize these records in their London Proceedings to prevent the Kazakovs from using funds in their accounts. Moreover, they stated quite clearly before the London Court that it was their plan (and the purpose of this Petition) to use any documents they obtain in this proceeding to verify the veracity of evidence they already submitted in support of their WFO Application. Now, they apparently have abandoned the WFO Application against the Kazakovs but have yet to abandon their effort to obtain substantial financial records belonging to the Kazakovs here. They also continue to pursue a WFO against Edelweiss (a Panamanian company), and injunctive relief against Edelweiss and its owner, a foundation of which Nikolai is the sole beneficiary, and therefore to interfere with Nikolai's access to his funds. Thus, Vera and Nikolai have standing to challenge the effort to obtain and ultimately use this evidence.

Moreover, the Kazakovs have made a timely application to intervene given that the 1782 Petition was filed on February 20, 2024 and did not give notice to the Kazakovs. Nor would any party to the Petition adequately represent the Kazakov's interest. Given the Petitioners' stated intention to use the records against Nikolai and Vera, the fraud permeating this 1782 Petition and the Petitioners March 15 withdrawal of the WFO Application against the Kazakovs but not this Petition (*see* Section IIB *infra*), Nikolai and Vera would be prejudiced if the motion is not granted. Thus, they have satisfied the burden they must meet to intervene under Fed. R. Civ. P. 24(a) as a matter of right and due process requires granting the Interested Parties' intervention request. *See In re Lake Holding & Fin. S.A.*, 2021 U.S. Dist. LEXIS 45822 (S.D.N.Y. Mar. 10, 2021). In the event this Court believes otherwise, it should exercise its "broad discretion" to permit intervention under Rule 24(b). *See In re JSCBTA Bank*, 577 F.mc- Supp. 3d 262 (S.D.N.Y. 2021); *In re Hornbeam Corp.*, 2015 U.S. Dist. LEXIS 142361, at *5.

## II.     THE PETITION TO TAKE DISCOVERY SHOULD BE DENIED

### A.     Legal Standard

Section 1782 authorizes a United States District Court, upon the application of an interested person, to assist foreign litigants in gathering information for use in foreign proceedings. 28 U.S.C. § 1782. The statute allows this Court to order discovery for use in a foreign proceeding when certain statutory factors are satisfied. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246 (2004).

A district court's assistance under § 1782 is discretionary, not mandatory. *Intel*, 542 U.S. at 244. Four non-exclusive factors from the Supreme Court's decision in *Intel* guide the analysis: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "(a) the nature of the foreign tribunal, (b) the character of the proceedings underway abroad, and (c) the receptivity of the foreign [tribunal]…to United States federal-court judicial assistance";

(3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65.  These factors "are not to be applied mechanically," and a district court may "also take into account any other pertinent issues arising from the facts of the particular dispute." *Kiobel ex rel. Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018). In fact, the Court always retains broad discretion to deny or modify the requests. *Metallgesellschaft v. Hodapp (In re An Order Permitting Metallgesellschaft Ag to Take Discovery)*, 121 F.3d 77 (2d Cir. 1997).

Here, the Petition fails to meet the statutory requirements because it is not for "use" in a foreign proceeding and this Court should exercise its discretion to deny the Petition.

**B.      The Court Should Exercise its Discretion to Deny the Application Because Petitioners Have Acted in Bad Faith**

Good faith is a prerequisite to relief under 28 U.S.C. § 1782.  If a party seeks discovery in "bad faith" or "for the purpose of harassment," it is not entitled to discovery under § 1782. *Euromepa S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095, 1101 n.6 (2d Cir. 1995). Petitioners' Petition has been brought in bad faith and to harass the Kazakovs, warranting denial.

**1.      Section 1782 Cannot Be Used to Support Efforts to Verify Already Submitted Fraudulent Evidence**

First and most notably, Petitioners failed to advise this Court about the substantial problems with the evidence that they were using in support of the WFO Application. Nor did Petitioners advise this Court that the real purpose for seeking this discovery is not to increase their chances of success in London but somehow to verify the veracity of the highly questionable evidence used in an effort to obtain a worldwide freezing order against the Kazakovs, which can be for no other purpose other than to handcuff the Kazakovs from continuing to defend themselves and prosecute

their own claims against the Bourlakovas in the various litigations across the globe, including the two pending in Florida. Sullivan Decl. ¶ 3.

The facts here are analogous to those in *In re Application of Diligence Global Bus. Intelligence S.A.*, 2021 U.S. Dist. LEXIS 100801, *3-4 (S.D.N.Y. May 27, 2021) (Oetken, J.) where the petitioner sought discovery from the U.S. target to evidence that its foreign investigation was justified. This Court denied the § 1782 petition because "DGBI has offered nothing to suggest that yet-private information, beyond DGBI's reach, would benefit the Swiss proceedings or any proceedings in England." *Id.* at *4-5. This Court specifically held:

> Although DGBI suggests that Holtzman's testimony and documents could help it 'justify' its earlier surveillance of Nuseibeh, it provides no foreign authorities indicating that previously unlawful surveillance can be rendered lawful by subsequently obtained evidence. In the absence of such authorities, DGBI's proposed use of the discovery sought — which is akin, in some ways, to an attempt to reverse-engineer probable cause from the fruit of an unlawful search — stretches credulity. DGBI has not met the demands of § 1782.

*Id.* at *5-6.

This reasoning is equally applicable here. Petitioners acknowledge that they need this discovery to verify that the veracity of the evidence already submitted (and later withdrawn) in their WFO Application. Thus, as in *In re Application of Diligence Global Bus. Intelligence S.A.*, Petitioners are attempting to use this Petition to obtain evidence in hopes of justifying the CT Report *ex post facto* or finding new material that might support an application that was based on fraud. That is not the purpose of the statute. This is even more apparent now that the Petitioners have withdrawn their reliance on the CT Report in the WFO Application.

Second, where the fraudulent act of a party coming for relief "has immediate and necessary relation to the equity that [the party] seeks" with respect to the matter in litigation, the Court can deny the request for a relief. *Keystone Driller Co. v. Gen Excavator Co.*, 290 U.S. 240, 245 (1933);

15

*CBF Industria de Gusa v. AMCI Holdings, Inc.*, 850 F.3d 58, 78 (2d Cir. 2017) (describing the doctrine of unclean hands as "that the equitable powers of this court can never be exerted on behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage. To aid a party in such a case would make this court the abettor of iniquity"). This doctrine also is directly applicable here. The entire basis for the Petitioners' London application was a forged, fraudulent and fabricated investigative report that Petitioners and their London counsel withdrew ahead of the London hearing and have now effectively renounced. In addition, subsequent investigation in London revealed the extent to which the Petitioners, through their investigator and counsel, improperly accessed the confidential files of the Kazakovs, including substantial sensitive and privileged documents which there held onto for months. Sullivan Decl. ¶ 2. Despite this egregious wrongdoing, Petitioners only just abandoned the effort to use these materials to support their claim against the Kazakovs and sill plan to pursue a WFO against Edelweiss. The Report and the various materials obtained by Petitioners served as the basis of Petitioners' WFO Application (now mostly withdrawn) and as the impetus for this 1782 Petition and the foundation upon which the 1782 Petition is based. Thus, while their London application was fueled by rampant wrongdoing that even Petitioners tacitly had to acknowledge, Petitioners nevertheless continue look to this Court to use its discretionary powers to help them advance their position with respect to the WFO Application.

Cases decided under 28 U.S.C. § 1782 are in accord with the principle set forth in *Keystone Driller Co.*  In. *In re Okean B.V.,* 60 F. Supp. 3d 419 (S.D.N.Y. 2014), the court denied a request for production under 28 U.S.C. § 1782 that would have invaded attorney-client privilege. Significantly the Court stated that under the circumstances "production of these materials to Okean for use in the Dutch litigation would not only be burdensome; it *would offend the core tenets of*

*our legal system.*" *Id.* (emphasis added). In so doing, the court recognized the incontrovertible position that any request for production must be consistent with bedrock legal principles on which the U.S. system is based. There is perhaps no more "core tenet" of the U.S. legal system than the tenet that proceedings should be based upon legitimate evidence – not evidence that is forged and fabricated or obtained through fraudulent or other improper methods. *See* 30 Moore's Federal Practice - Civil § 811.04 (2024) (noting "the federal courts have stated that knowing presentation of perjurious and fraudulent evidence threatens the integrity of the judicial process and is prohibited").

Petitioners' attempt to use fraudulent and forged material to obtain sweeping relief in London - - relief that generally is not even available in the United States (*Grupo Mexicano de Desarrollo, S. A. v. Alliance Bond Fund, Inc.*,527 U.S. 308 (1999); *see also, Tiffany (NJ) LLC, Tiffany & Co. v. China Merchants Bank*, 589 F. App'x 550, 552 (2d Cir. 2014)(finding that a court may only issue an asset-freeze injunction pursuant to an equitable claim, and only if the plaintiff demonstrates a "nexus" between the assets she seeks to freeze and the specific equitable claim sought) - - and the revelation that they have built their position on confidential materials that they have obtained through illicit means, establishes that this application should be rejected outright by this Court. This is particularly so where this is not the first time that Petitioners' investigator or counsel offering the report has been caught seeking to utilize fraudulent and false material. In fact, the very same thing happened in London only a few short months ago. Sullivan Decl. ¶¶ 18, 21-22.

Petitioners try to escape the implications of their bad faith by seemingly claiming that the discovery sought is more broadly relevant to the London Proceedings and the effort to identify what they describe as "family assets." This is clearly contrived. Petitioners do not demonstrate

17

what specific claims this discovery would be applicable to and, in fact, what they seek is more akin to post-judgment discovery that is generally not permitted at this stage. Significantly, the day after filing this Petition, they advised the London High Court that they intended to verify the contents of the CT Report through this 1782 Application, demonstrating their true desire here. Sullivan Decl. at Exhibit O, pp. 107-108.

Under these circumstances, the Court should exercise its discretion to deny the Petition in its entirety.

**2.    The Pending Florida Proceedings, and the Failure to Advise the Court of Them, is Bad Faith Precluding Discovery**

Courts have rejected § 1782 applications where the applicants have misrepresented related actions. *In re Application Auto-Guadeloupe Investissement S.A., for an Order to Take Discovery Pursuant to 28 U.S.C. Section 1782,* 2012 WL 4841945, at *8 (S.D.N.Y. Oct. 10, 2012) (finding that applicant's omission of "critical information in its *ex parte* § 1782 Application" supported conclusion that applicant "may have acted in bad faith"); *Ex Parte Gov't of the Lao People's Democratic Republic,* 2017 WL 2838051, at *5 (D. Idaho June 30, 2017) (vacating § 1782 order where applicant "failed to disclose other, related proceedings [and] did so strategically").

Here, the Petitioners have done exactly that: they failed to disclose the existence of the two pending Florida proceedings or the federal RICO action they had filed (in the United States District Court for the Southern District of Florida) and voluntarily dismissed before effecting service but not before they apparently used it against the Kazakovs to advance their position in other jurisdictions. There is no doubt that Petitioners were obligated to disclose this information given the circumstances here. The Florida cases address matters directly related to those at issue in London – including ownership of Edelweiss. Indeed, most of the critical disputes among the parties are being litigated in Florida and a trial is scheduled for October of this year. Information sought in the § 1782 Application

18

is directly relevant to various issues pending in Florida. At the same time, while Petitioners ask this Court to give them broad discovery purportedly for use in London, they have resisted providing discovery in Florida. Sullivan Decl. ¶ 15.

It would be repugnant to notions of federal-state comity and to the purpose of § 1782, if Petitioners could, with a federal court's assistance, use a newly filed WFO Application to circumvent the protections of Florida law and to undermine the authority of a Florida court overseeing a long-pending lawsuit, and about to conduct hearings on multiple pending motions concerning the scope of disclosure in those cases. *See Younger v. Harris*, 401 U.S. 37, 44 (1971) ("What…[comity]…represent[s] is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States."); *In re Harbour Vict. Inv. Holdings Ltd.*, 2015 U.S. Dist. LEXIS 87912, *19 (S.D.N.Y. June 29, 2015) (denying § 1782 request because it was brought after receiving an adverse discovery ruling in the pending U.S. proceeding). Yet, Petitioners chose not to disclose even the existence of these proceedings or the pending discovery requests and disputes in its *ex parte* application. In these circumstances, "it is difficult to draw any conclusion but that [Petitioners] feared that a candid description of the litigation would have undermined if not defeated its application." *In re WinNet R CJSC,* 2017 U.S. Dist. LEXIS 56985, *9 (S.D.N.Y. Apr. 13, 2017). Petitioners' application must be rejected for this reason alone.

### 3.    The WFO Application was Brought to Harass the Kazakovs

The circumstances of Petitioners' newly filed WFO Application show that it was, at least in part, brought to harass the Kazakovs and to circumvent Florida law and the Florida court's discovery process. Petitioners filed suit in London in July 2020 while Veronica/Elena filed the first

action in Florida state court in 2021, the Bourlakovas filed the RICO action in Florida federal court in November 2022, and Veronica filed her own action in Florida state court in January 2023. Yet, Petitioners do not explain why they waited until now -- almost four years later and just about one month after the Florida Court ruled against their motions to dismiss -- to file the WFO Application. This timing alone is sufficient for the Court to infer that Petitioners are acting in bad faith. Petitioners only sought the WFO in the London Proceeding only after the Florida court rejected their motions to dismiss the Kazakovs' counterclaims for jurisdictional and *forum non conveniens* grounds. If Petitioners were truly concerned about potential dissipation of the assets held by the Kazakovs, presumably they would have pursued that relief much earlier.

For all these reasons as well, the Court should reject Petitioners' *ex parte* application as having been brought in bad faith.

### C.    The 1782 Application Should be Denied as an Improper Fishing Expedition

Even if the Petition was not intertwined with a massive fraud and other wrongdoing and plainly filed in bad faith, it still should be denied insofar as it does not comply with the statute and amounts to a fishing expedition that is not permitted by the Federal Rules of Civil Procedure.

Discovery under § 1782 must be for "use" in a foreign proceeding. "By adopting the phrase 'for use,' Congress plainly meant to require that § 1782 applicants show that the evidence sought is 'something that will be employed with some advantage or serve some use in the proceeding.'" *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015) (quotation marks omitted). It is well established that "an applicant must do more than show that it 'can furnish information in the hope that it might be used' abroad." *In re Application of Diligence Global Bus. Intelligence S.A.*, 2021 U.S. Dist. LEXIS 100801, *1 (quoting *Certain Funds, Accounts and/or Inv. Vehicles*, 798 F.3d at 121). Fishing expeditions are met with extreme

20

skepticism in § 1782 applications. *See In re An Order Permitting Metallgesellschaft Ag to Take Discovery)*, 121 F.3d 77  (noting "if the judge . . . suspects that the [§ 1782 discovery] request is a 'fishing expedition' or a vehicle for harassment, the district court should deny the request"); *In re Harbour Vict. Inv. Holdings Ltd.*, 2015 U.S. Dist. LEXIS 87912, *19 (concluding "that concern for abuse of the § 1782 petition, as in the form of a fishing expedition to determine what other proceedings might be brought, is equally relevant to the exercise of its discretion").

Here, Petitioners are pursuing the Petition to see if they have a basis to seek a worldwide freezing order here, or to "verify" if such basis exists given the obvious problems with their own evidence. Sullivan Decl. ¶ 24. But that does not qualify as "for use in a pending foreign proceeding." The situation here is akin to when a party seeks § 1782 discovery to determine if it has a viable claim that it would bring at a later time. Those petitions are routinely rejected. *See In re Harbour Vict. Inv. Holdings Ltd.*, 2015 U.S. Dist. LEXIS 87912 at *19; *In re Libyan Asset Recovery*, 2023 U.S. Dist. LEXIS 206667, *28 (S.D.N.Y. Nov. 16, 2023) (denying § 1782 discovery because it sought "a wide-ranging investigation into whether, where, and against whom it may be able to bring future litigation to recover stolen assets"). The fact that there is a pending WFO Application does not alter the application of this precedent here, where the WFO Application was filed without any actual evidentiary support given that Petitioners withdrew reliance on the CT Report pending an opportunity to verify its veracity through this Petition. Sullivan Decl. ¶¶ 2, 23.

Driving this point home is Petitioners' abandonment of their WFO Application against the Kazakovs.  The 1782 Application does not support any claim for relief against them, and there simply is no legal basis for seeking documents relating to them.  Yet the Application clearly seeks a massive number of documents relating to them, their accounts and their financial transactions.

Even if this Court overlooked this fatal problem, the Petition would still be wildly overbroad and improper for that reason alone. While Petitioners contend that they seek "limited discovery," there is nothing at all "limited" about the subpoena. It seeks "all Documents and Communications, including any wire transfer notes, regarding transfers or settlement payments made by or to or otherwise concerning a referencing. . . ." It goes on to list ten different and separate individuals, including Nikolai, Vera, and Oleg, as well as Svetlana, Nikolai and Vera's daughter. It also seeks "all Documents and Communications" regarding thirty-eight different entities, including essentially all entities that Nikolai and Oleg utilized as part of their businesses. It includes for good measure requests for documents from various fictitious and fraudulent entities that were improperly included in the fabricated CT Report. Sullivan Decl. ¶ 21. It even requests all communications and transfers relating to over one-hundred different accounts. Sullivan Decl. ¶ 19. In short, it seeks every single piece of paper in the possession of CHIPS that relates in any way to Nikolai or Vera and seeks every single piece of paper that reflects any financial activity in which they were involved, and all of this is over a period of six years, from January 1, 2018 to the present.

Hence, the Petition amounts to a classic fishing expedition, seeking all documents and information relating in any way to the Kazakovs and others over a period of several years in the hope of finding something beneficial. Sullivan Decl. ¶ 34.  As the Court remarked in *Banoka S.à.r.l v. Alvarez & Marshal, Inc*., 2023 U.S. Dist. LEXIS 17176, *18 (S.D.N.Y. Feb. 1, 2023), these "broad demands reveal the discovery sought is more in the nature of a fishing expedition with the hope that it will turn up sufficient factual information to support a colorable claim of fraud." Such an exercise, which is not narrowly tailored to find highly relevant information, is explicitly forbidden by the federal rules and by case law under 28 U.S.C. § 1782. Thus, even if the Court

were willing to overlook Petitioners' unclean hands, bad faith, efforts to circumvent discovery proceedings in Florida and involvement in what appears to be a massive fraud, it should deny their application and reject the subpoena for that reason alone.

**III.    IF THE COURT IS INCLINED TO PERMIT THE PETITIONERS' REQUESTED DISCOVERY, IMMEDIATE DISCOVERY OF THE <u>PETITIONERS BY THE KAZAKOVS SHOULD BE PERMITTED</u>**

If the Court is still inclined to allow the requested discovery to proceed, the Kazakovs respectfully request that they be permitted to take immediate discovery of the Petitioners in the form of document requests and depositions. The Intervenors certainly should be permitted to explore the circumstances surrounding the CT Report, including the apparent they of confidential and privileged information, before this Court exercises its powers to assist the Petitioners in their evidence gathering.  Sullivan Decl. ¶¶ 2, 26-27. Given that they seek to use this Court to assist them in their efforts abroad, the Petitioners should have no objections to such discovery.

<u>**CONCLUSION**</u>

For the reasons stated herein, Nikolai and Vera should be permitted to intervene in this action and upon their intervention, the Court should vacate the order permitting discovery pursuant to 28 U.S.C. § 1782.  In the event that the Court is inclined to grant the Petition, Intervenors request an opportunity to take discovery against the Petitioners, including depositions, concerning the basis for the evidence in support of the WFO Application for which they are seeking the § 1782 discovery here.

Dated: March 25, 2024

**WHITE AND WILLIAMS LLP**

By: _____
Nicole A. Sullivan, Esq.
7 Times Square, Suite 2900 |
New York, NY 10036

23

212.631-4420
sullivann@whiteandwilliams.com