# Exhibit 4

**Claim No: BL-2020-001050**

27 Mar 2024

BL-2020-001050

**IN THE HIGH COURT OF JUSTICE**

**BUSINESS AND PROPERTY COURTS OF ENGLAND AND WALES**

**BUSINESS LIST (ChD)**

**BEFORE: THE HONOURABLE MR JUSTICE RICHARD SMITH**

**DATED: 27 MARCH 2023**

**BETWEEN:-**

**(1) LOUDMILA BOURLAKOVA**
**(2) HERMITAGE ONE LIMITED**
**(3) GREENBAY INVEST HOLDINGS LIMITED**
**(formerly known as Maravan Services Limited)**
**(4) VERONICA BOURLAKOVA**

**Claimants**

**-and-**

**(1) OLEG BOURLAKOV**
**(2) DANIEL TRIBALDOS**
**(3) LEO SERVICES HOLDING LIMITED**
**(4) LEO TRUST SWITZERLAND AG**
**(5) REUWEN SCHWARZ**
**(6) SEMEN ANUFRIEV**
**(7) NIKOLAI KAZAKOV**
**(8) VERA KAZAKOVA**
**(9) COLUMBUS HOLDING AND ENTERPRISES SA**
**(10) FINCO FINANCIAL INC**
**(11) GATIABE BUSINESS INC**
**(12) EDELWEISS INVESTMENTS INC**
**(13) IPEC INTERNATIONAL PETROLEUM CO INC**

**Defendants**

**-and-**

**(14) HEMAREN STIFTUNG**
**(15) WLAMIL FOUNDATION**
**(16) DELOS GLOBAL SA**
**(17) JOVELLANOS INVESTMENTS CORP**

**Intended Defendants**

**ORDER**

## PENAL NOTICE

**IF YOU EDELWEISS INVESTMENTS INC OR HEMAREN STIFTUNG DISOBEY THE UNDERTAKINGS YOU HAVE GIVEN THE COURT AS RECORDED IN THIS ORDER YOU MAY BE HELD TO BE IN CONTEMPT OF COURT AND MAY BE FINED OR HAVE YOUR ASSETS SEIZED OR ANY OF YOUR DIRECTORS OR OFFICERS MAY BE IMPRISONED, FINED OR HAVE THEIR ASSETS SEIZED**

**ANY OTHER PERSON WHO KNOWS OF THIS ORDER AND DOES ANYTHING WHICH HELPS OR PERMITS EDELWEISS INVESTMENTS INC OR HEMAREN STIFTUNG TO BREACH THE UNDERTAKINGS THEY HAVE GIVEN THE COURT AS RECORDED IN THIS ORDER MAY ALSO BE HELD TO BE IN CONTEMPT OF COURT AND MAY BE IMPRISONED, FINED OR HAVE THEIR ASSETS SEIZED**

**UPON** the applications made by the First and Fourth Claimants (the "**Bourlakovas**") dated 18 January 2024 and 28 February 2024 seeking, amongst other things, interim injunctive relief against the Sixth to Eighth Defendants ("**Mr Anufriev**" and "**the Kazakovs**"), the Twelfth Defendant ("**Edelweiss**") and the Intended Fourteenth Defendant ("**Hemaren**") (the "**Injunction Application**");

**AND UPON** the Injunction Application coming before the Court for a hearing on 26 and 27 March 2024;

**AND UPON** Edelweiss applying to adjourn the hearing of the Injunction Application;

**AND UPON** the Court accepting the undertaking of Edelweiss that, until final determination of the Injunction Application, or further order of the Court, it shall not deal with, diminish or dispose of its assets save for: (1) in the ordinary course of its business; (2) to pay reasonable legal expenses; and (3) to make other payments of a kind set out in the Schedule to this Order

**AND UPON** Hemaren undertaking that, until final determination of the Applications, or further order of the Court, Hemaren will not in any way dispose of, deal with or diminish the value of any shares it may have, or claim to have, in Edelweiss, including but not limited to by procuring or purporting to procure Edelweiss to declare and/or pay and/or make dividends or distributions other than as permitted by the terms of Edelweiss's undertaking above;

**AND UPON** the Applicants, Edelweiss and Hemaren agreeing that the undertakings of Edelweiss and Hemaren are given to the Court (and accepted by the Court) subject to the Court retaining jurisdiction to accept variations to the respective undertakings, insofar as the interests of justice require;

**AND UPON** the Court accepting the Bourlakovas' undertaking that if the Court later finds that Edelweiss or Hemaren have been caused loss by complying with their respective undertakings recorded above, and decides that Edelweiss or Hemaren should be compensated for that loss, the Bourlakovas will comply with any order the Court may make;

**AND UPON** hearing Leading Counsel for the Bourlakovas, Mr Anufriev, the Kazakovs, Edelweiss and Hemaren;

**AND UPON** the Court having heard submissions with respect to, and subsequently determined for the brief reasons given below, the amount of the payment on account of costs to be paid pursuant to paragraph 4 below;

**IT IS ORDERED THAT:-**

**The Injunction Application**

1.   The Injunction Application as against Mr Anufriev and the Kazakovs is dismissed.

2.   The Injunction Application as against Edelweiss and Hemaren is adjourned to be considered at a directions hearing before Mr Justice Richard Smith to be fixed through the usual channels with a time estimate of half a day.

**Costs**

3.   The Bourlakovas shall pay Mr Anufriev and the Kazakovs' costs of the Injunction Application, such costs to be subject to a detailed assessment on the indemnity basis if not agreed.

4.  By 4pm on 17 April 2024, the Bourlakovas are to pay the following amounts to the following parties as payments on account of the costs referred to in paragraph 3 above:-

(1) Mr Anufriev: £245,000; and

(2) The Kazakovs: £250,000.

5.  Save as aforesaid, the costs of the Injunction Application are reserved.

**Service**

6.  The Bourlakovas have permission to serve this order on Hemaren out of the jurisdiction and by the methods set out in paragraph 1 of the order herein of Richard Smith J dated 5 March 2024. Where the document is delivered before 4.30pm on a business day, the date of deemed service by those methods will be that same business day. In every other case of service by those methods, the deemed date of service will be the next business day.

7.  This order may be served on the Defendants to these proceedings by serving it on their English solicitors by email.

8.  Personal service of this order shall be dispensed with.

9.  This order shall be served by the Bourlakovas on Hemaren and the other Defendants.

**REASONS (paragraph 4 above - quantum)**

1.  The parties were agreed that the Bourlakovas should pay Mr Anufriev and the Kazakovs' costs of the Injunction Application, such costs to be subject to a detailed assessment on the indemnity basis if not agreed. The parties were also agreed that there should be a payment on account thereof. The parties were not agreed on the amount of that payment on account.

2.  Mr Anufriev's total costs claimed were £408,360.91 of which he sought a payment on account representing 65% thereof. The Kazakovs' total costs claimed were £421,763.50 of which they sought a payment on account representing 75% thereof.

3.   The Bourlakovs were willing to make a payment on account equivalent to 50%, canvassing the suggested risk of duplication, the suggested lateness of receipt of the relevant costs schedules and the suggested risk of overpayment as reasons for limiting the payments to that percentage.

4.   In considering the appropriate amount of the payment on account, the Court is not looking for the irreducible minimum but an estimate of the likely recovery, subject to an appropriate margin for error and the potential effect of other factors impinging on recoverability and/ or risk of overpayment.

5.   Having considered the parties' respective submissions, the agreed basis of assessment and the course of the Injunction Application thus far and the likely costs incurred and recoverable, the Court is satisfied that an appropriate payment on account in this case, after applying a margin of error avoiding the risk of overpayment, is £245,000 for Mr Anufriev and £250,000 for the Kazakovs, representing approximately 60% of the respective costs claimed.


**Service of this order**

A copy of this order has been provided to the Bourlakovas' legal representatives, Mishcon de Reya LLP of Africa House, 70 Kingsway, London WC2B 6AH. Tel: 020 3321 7000. Ref: AWD/VP/62761.5.

## Schedule

For the purposes of Edelweiss's undertaking, payments for the following purposes are payments in the ordinary course of its business or are otherwise permitted:

a.  Payments for the purposes of managing and dealing with its own assets and asset portfolios in the ordinary course of business so long as all assets and portfolios (and the proceeds of any disposal of or dealing with assets, which must be on commercial terms and at arm's length) remain under Edelweiss's ownership and control;

b.  Payments for the purpose of maintaining Edelweiss's own assets and asset portfolios and/or its own proper functioning, including (for the avoidance of doubt and without limitation) payments to financial advisors, corporate service providers, corporate advisors, payments to maintain good standing and ensure legal and regulatory compliance, and payments of legal expenses;

c.  Lending such funds to Silver Angel Yachting Ltd as may be reasonably required in order to maintain the Black Pearl, provided any sums advanced are agreed to be repayable on demand after no more than 3 years from the date of the relevant advance;

d.  Payments for the purpose of maintaining Hemaren and the Cantucci Foundation or any assets held directly or indirectly by the Cantucci Foundation, and/or their own proper functioning, including (for the avoidance of doubt and without limitation) payments to corporate service providers, corporate advisors, payments to maintain good standing and ensure legal and regulatory compliance, and payments of legal expenses, provided such payments are made by way of loan and any sums advanced are agreed to be repayable on demand after no more than 3 years from the date of the relevant advance, and subject to an aggregate limit of €600,000 per quarter;

e.  Payments of reasonable expenses in respect of AO kHEMZ-IPEC (Ukraine) and Privredni Preporod Doo Banja Luka (Serbia), subject to an aggregate limit of €275,000 per annum.